IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
_____

| | |
|---|---|
| **KELLY SERVICES, INC., and** ) | |
| **KELLY PROPERTIES, LLC.** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.:_____ |
| ) | |
| **CREATIVE HARBOR, LLC.,** ) | |
| ) | |
| Defendant. ) | **DEMAND FOR JURY TRIAL** |

_____

**COMPLAINT FOR DECLARATORY JUDGMENT**
_____

Plaintiffs KELLY SERVICES, INC. and KELLY PROPERTIES, LLC. (collectively Plaintiffs or Kelly) file this Complaint for Declaratory Judgment against Defendant CREATIVE HARBOR, LLC. (Defendant or Creative Harbor), and state as follows:

## NATURE OF THE ACTION

1. Kelly seeks declaratory judgment that: (1) Kelly possesses rights to the mark WORKWIRE for personnel placement, career information, job search and branch office locator, and social media connection services and a downloadable software application (commonly referred to as an "app") related thereto, and related

goods and services, that are superior to any rights possessed by Creative Harbor; (2) Kelly does not, and has not, infringed any alleged trademark rights to WORKWIRE asserted by, or possessed by, Creative Harbor pursuant to 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(c), or common law unfair competition; (3) any alleged trademark rights asserted by, or possessed by, Creative Harbor are invalid and unenforceable; (4) Creative Harbor has engaged in unfair competition pursuant to 15 U.S.C. § 1125(a) and (c) and/or common law unfair competition; and (5) that Creative Harbor has intentionally interfered with Kelly's business relationships.

2. Creative Harbor has accused Kelly of infringing Creative Harbor's alleged trademark rights to the mark WORKWIRE in view of Kelly's use of WORKWIRE in conjunction with an Internet-based software application (or "app") offering employment-related services and information. Kelly denies infringement and asserts that Creative Harbor's alleged trademark rights are invalid and unenforceable, at least in view of Kelly's superior rights.

## THE PARTIES

3. Plaintiff, KELLY SERVICES, INC., is a Delaware corporation with its principle place of business located at 999 West Big Beaver Road, Troy, Michigan, 48084.

4. Plaintiff, KELLY PROPERTIES, LLC., is a Delaware limited liability

company with its principle place of business located at 999 West Big Beaver Road, Troy, Michigan, 48084.

5. Upon information and belief, Defendant CREATIVE HARBOR, LLC., is a California limited liability company having a place of business located at 11030 Hartsook Street, Suite 227, Los Angeles, California, 91601.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332(a)(1), 1338 and 1367; 15 U.S.C. § 1121(a); and 28 U.S.C. §§ 2201.

7. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over Creative Harbor pursuant to M.C.L.A. § 600.711(3) because, upon information and belief, Creative Harbor has continuous and systematic contacts in the State of Michigan and within this District.

9. Further, this Court has personal jurisdiction over Creative Harbor pursuant to M.C.L.A. § 600.715(2). Creative Harbor has directed its false assertions of infringement to Kelly in this district, and a substantial part of the events giving rise to Kelly's claims occurred, and will occur, in this District.

Through its actions Creative Harbor has done or caused an act to be done, or consequence to occur, in the State of Michigan resulting in this action for tort, including intentional interference with prospective business advantage.

10.  Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c).

## FACTUAL BACKGROUND

*Plaintiffs Kelly Services, Inc. and Kelly Properties, LLC*

11.  Kelly is one of the world's largest providers of personnel and managed business services – staffing 99% of Fortune 100 companies and 90% of Fortune 500 companies.

12.  Kelly was founded in Detroit, Michigan in 1946, and its founder, William Russell Kelly, created the modern staffing industry that year when he sent one of his regular employees to work in a customer's office.

13.  Since sending out its first employee nearly 70 years ago, Kelly has grown and expanded what Mr. Kelly called "the people business," staffing businesses across the U.S. and in twenty-six countries throughout the world.

14.  Kelly's global headquarters is located in this District at 999 West Big Beaver Road, Troy, Michigan, 48084, where Kelly employees about 1,100 people.

15.  Kelly employs 7,000 people globally in its branch offices.

16.  In 2013, Kelly provided employment to more than 540,000 people.

17. Kelly has been recognized for its quality processes, management practices, supplier diversity, and community involvement with the following: Intel Corporation's Certified Supplier Quality Award; Johnson & Johnson's Supplier Diversity Partnership Award; Sara Lee Corporation's Outstanding Service and Support Award; American Red Cross/Southeast Michigan Corporate Citizen Award; Michigan Minority Business Development Council's "Corporation of the Year;" Fortune Magazine's "Most Admired Companies" list; and Workforce Magazine's "80 People, Events & Trends that Shaped HR."

18. Kelly's business has grown and evolved from a small personnel staffing services company to an international managed services provider, providing management services to some of the largest companies in the world.

19. As part of its business, Kelly provides information and job search tools to employees, applicants and employers, and strives to make this information accessible across multiple platforms, including the Kelly website, Facebook®, Twitter® and mobile application software ("app" or "apps") for portable devices.

20. In this regard, in 2011 Kelly launched its first Internet-based application, The Talent Project, to provide employers with mobile access to talent supply chain information and management tools (EXHIBIT 1).

21. On or around April 5, 2013, Kelly began development on a second

application, to provide employees and applicants with career information and job search capabilities.

22. At its Troy, Michigan headquarters, Kelly's Marketing Department and IT Department created content for the application and designed the application.

23. Kelly also worked closely with an application developer in Royal Oak, Michigan.

24. At least as early as December 15, 2013, Kelly's Marketing Department selected the mark WORKWIRE for the application.

25. As the application neared completion, on December 16, 2013, Kelly's Marketing Department submitted to Kelly's Law Department the WORKWIRE mark for review and clearance, pursuant to internal policy.

26. On December 31, 2013, after conducting a clearance investigation including a review of the U.S. Trademark and Patent Office, counsel for Kelly approved the WORKWIRE mark for use with the application.

27. Kelly concurrently worked on press releases, new pages for its website, and messages for its various social media platforms to announce the WORKWIRE application.

28. On or around January 31, 2014, Kelly finalized its WORKWIRE

6

application, which included incorporating the cleared WORKWIRE mark into the program, and prepared the application for uploading to the Apple AppStore (EXHIBIT 2).

29. On February 4, 2014, Kelly submitted the WORKWIRE application to Apple, Inc. for Apple to make available in its AppStore for download (EXHIBITS 2 and 3).

30. On February 17, 2014, Apple, Inc. approved the WORKWIRE application for the AppStore (EXHIBITS 2 and 4).

31. Two days later, on February 19, 2014, Apple made the WORKWIRE application publically available for download in the AppStore (EXHIBITS 5, 6 and 7).

32. With the WORKWIRE application live in the Apple AppStore, Kelly announced the launch of its WORKWIRE application on Monday, February 24, 2014 (EXHIBITS 8 and 9).

*Defendant Creative Harbor, LLC*

33. Upon information and belief, Creative Harbor was formed as a California limited liability company on February 7, 2014, months after Kelly selected the WORKWIRE mark, and notably three days after Kelly Services submitted its WORKWIRE application to Apple for review prior to inclusion in

the Apple App Store (EXHIBITS 10 and 11).

34. Upon information and belief, Creative Harbor has a place of business located at 11030 Hartsook Street, Suite 227, Los Angeles, California 91601 (EXHIBITS 12 and 13).

35. Upon information and belief, Creative Harbor "specializes in original content creation specializes in original content creation & concept development for all media, including but not limited to Internet, Mobile, Photography, Film and TV." (EXHIBITS 14 and 15)

36. Upon information and belief, nothing in Creative Harbor's description indicates any knowledge, interest or previous work in the personnel services industry. (EXHIBITS 14 and 15)

37. According to U.S. Patent and Trademark Office records, on February 19, 2014, *the same day Kelly's WORKWIRE application for career information and staffing services was available for public download in the Apple AppStore*, Creative Harbor filed with the U.S. Patent and Trademark Office two trademark applications for the mark WORKWIRE (EXHIBIT 16).

38. The first trademark application is U.S. Serial No. 86/198,230 for business services including *inter alia* "Temporary personnel services" in Class 35 (EXHIBIT 12).

39. The second trademark application is U.S. Serial No. 86/198,309 for computer hardware and software including *inter alia* "Computer application software for for [sic] employment, staffing and recruitment, namely, software for for finding employment, staffing, recruitment, and contractor opportunities" in Class 9 (together with Ser. No. 86/198,230, referred to collectively as the "Creative Harbor Applications") (EXHIBIT 13).

40. The Creative Harbor Applications were filed based on a claimed "intent to use" the marks in U.S. commerce, rather than actual use (EXHIBITS 12 and 13).

*Creative Harbor's Acts Giving Rise to Case of Actual Controversy*

41. On March 10, 2014, Creative Harbor's attorney sent a cease and desist "order" ("Demand Letter") to Kelly accusing Kelly of infringing Creative Harbor's alleged rights to the mark WORKWIRE (EXHIBIT 17).

42. In its Demand Letter, Creative Harbor describes itself as "the designer and developer of technology products and services, consumer electronics, software programming and mobile applications in the United States and throughout the world," even though it was one-month old at the time. *Id.*

43. The Demand Letter explains that "Creative Harbor has expended considerable resources marketing its mobile applications under the WORKWIRE

9

brand" although no evidence of such was provided, and Kelly has been unable to locate any such evidence. *Id.*

    44.     The Demand Letter states:

Kelly Services' use of the term "WorkWire" in connection with offering, distribution and promotion of a mobile or desktop software application or website is likely to cause consumer confusion as to the source or sponsorship of Kelly Services' products and constitutes trademark infringement and unfair competition under federal and state law, including the Federal Lanham Act under Title 15 of the United States Code.

*Id.*

    45.     The Demand Letter further states:

We hereby request that Kelly Services provide us with written assurances that it will cease using the infringing WorkWire term and other trademark and/or logo that is likely to cause confusion with Creative Harbor's WORKWIRE trademark. We also request that you provide us with evidence that demonstrates that Kelly Services has abandoned its use of the infringing mark. Please provide these written materials to us no later than **March 14, 2014** at 5:00 PM PT.

*Id.* (emphasis in original).

    46.     The Demand Letter closes with the threat of legal action:

In the absence of such confirmation, our client will have no choice but to file a complaint in federal court, initiate take down procedures in the Apple App Store and other third party platforms, and seek all other available remedies, including but not limited to damages at law and equity, and attorney's fees.

(EXHIBIT 17).

10

47. The next day, March 11, 2014, Kelly began its internal investigation and contacted its outside intellectual property counsel.

48. Later that day, counsel for Kelly contacted counsel for Creative Harbor to confirm receipt of the Demand Letter, and stated that counsel was investigating the matter and would contact Creative Harbor to discuss the situation shortly (EXHIBIT 18).

49. On Monday, March 17, 2014, the fifth business day after sending the Demand Letter to Kelly, Creative Harbor sent Kelly an email stating the following: "In the absence of a reasonable response no later than March 19, 2014 at 2:30 PM PST, my client will have no choice but to initiate DMCA take down action with the Apple App Store and pursue other legal recourse as appropriate" (EXHIBIT 19).

50. On Tuesday March 18, 2014, Kelly informed Creative Harbor that its investigation was ongoing, but that additional time to respond would be necessary (EXHIBIT 20).

51. Counsel for Creative Harbor responded, indicating that it would expect Kelly's reply no later than "Wednesday, March 26, 2014 at 3:00 PM PST" [sic], but noting that if the investigation required more time, Creative Harbor would allow an additional 48 hours upon written request (EXHIBIT 21).

52. As a result of the above, including Creative Harbor's Demand Letter or "order" that Kelly cease and desist use of WORKWIRE, and Creative Harbor's intent to "file a complaint in federal court, initiate take down procedures at the Apple App. Store and other third platforms, and seek all other available remedies, including but not limited to damages at law and equity, and attorneys' fees," there exists an actual case and controversy between the parties as to at least whether Kelly has infringed any alleged rights of Creative Harbor to WORKWIRE, and whether any alleged trademark rights asserted by Creative Harbor are invalid and unenforceable.

## COUNT I
## CLAIM FOR DECLARATION OF NO TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, OR DILUTION

53. Kelly incorporates by reference all the allegations of the paragraphs set forth above as if fully set forth herein.

54. Kelly denies that its use of WORKWIRE violates whatever Federal or State rights Creative Harbor may have, or attempt to obtain, in WORKWIRE. Use of WORKWIRE by Kelly is not in violation of any rights Creative Harbor may have pursuant to 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(c) or the common law of unfair competition.

55. Kelly's rights to WORKWIRE are superior to any rights to

WORKWIRE alleged by Creative Harbor.

56. Kelly does not and has not infringed any alleged trademark rights asserted by Creative Harbor.

57. Any alleged trademark rights asserted by Creative Harbor are invalid and unenforceable.

58. Creative Harbor is not entitled to protection under the trademark laws of the United States, including the Lanham Act, or under any other federal or state statute or law, for "WORKWIRE."

59. Creative Harbor's assertions that Kelly is violating its alleged rights to WORKWIRE irreparably injures Kelly and adversely affects its business and the large investment it has made in its mark WORKWIRE and attendant good will. These assertions will continue to adversely affect Kelly's business unless prevented by this Court.

60. Based on the allegations above, there is an actual and substantial controversy between Kelly and Creative Harbor, who have adverse legal interests. Creative Harbor has made clear to Kelly its belief that its trademark is currently being infringed by Kelly's use of its own trademark, and Kelly has denied any wrongdoing. The dispute between Kelly and Creative Harbor is substantial, definite and immediate.

2:14-cv-11249-MFL-RSW Doc # 1 Filed 03/26/14 Pg 14 of 17 Pg ID 14

61. Accordingly, Kelly requests the Court, pursuant to 28 U.S.C. § 2201, et seq., to declare that Creative Harbor does not own WORKWIRE as applied to - personnel placement, career information, job search and branch office locator, and social media connection services and a downloadable software application related thereto, and related goods and services; and that Kelly's rights to WORKWIRE are superior to any rights of Creative Harbor.

## COUNT II
## INTENTIONAL INTERFERENCE WITH ACTUAL AND PROSPECTIVE BUSINESS RELATIONS

62. Kelly incorporates by reference all the allegations of the paragraphs set forth above as if fully set forth herein.

63. Creative Harbor has made or intends to make representations to business entities with whom Kelly has or will have a business relationship with asserting that Kelly's use of WORKWIRE infringes Creative Harbor's rights.

64. Upon information and belief, Creative Harbor made or intends to make these statements with the intent to interfere with Kelly's business relationships, and knew or should have known that the statements would result in harm to Kelly.

65. Creative Harbor's statements have harmed or will harm Kelly's business relationships by interfering with Kelly's ability to provide marketing and distribution of personnel placement information; career information; job search and

14

branch office locator information; and social media connection services through Kelly's WORKWIRE product and application. Creative Harbor's conduct will continue unless enjoined by the Court.

66. Creative Harbor's intentionally making of, or intent to make, false and misleading representations regarding Kelly's rights to WORKWIRE to entities and persons with which Kelly has or will have a business relationship with irreparably injures Kelly and adversely affects its business and the large investment it has made in its mark WORKWIRE and attendant good will. These assertions will continue to adversely affect Kelly's business unless prevented by this Court, thus resulting in a substantial, definite and immediate dispute between the parties.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Kelly requests that this Court enter Judgment in favor of Kelly Services, Inc. and Kelly Properties, Inc., and Order that:

a. Kelly possesses rights to WORKWIRE that are superior to any rights possessed by Creative Harbor;

b. Kelly does not, and has not, infringed any alleged trademark rights to WORKWIRE asserted by, or possessed by, Creative Harbor;

c. Creative Harbor has no valid or enforceable rights to WORKWIRE;

d. Kelly's activities do not violate the Lanham Act or other federal and state laws;

e. Creative Harbor's claims are barred by the doctrine of unclean hands;

f. Creative Harbor be preliminarily and/or permanently enjoined from asserting that Kelly has any legal obligation to refrain from using the term WORKWIRE;

g. Creative Harbor pay Kelly for the damages Kelly suffered as a result of Creative Harbor's illegal activities;

h. Creative Harbor account and pay over to Kelly all gains, profits and advantages derived from their illegal activities as provided for in 15 U.S.C. § 1117;

i. Creative Harbor pay Kelly three times its damages for Creative Harbor's willful and intentional misconduct as provided for in 15 U.S.C. § 1117(a);

j. Creative Harbor pay Kelly three times Creative Harbor's profits or Kelly's damages (whichever is greater) as provided for in 15 U.S.C. § 1117(b);

k. This case is exceptional under 15 U.S.C. § 1117(b) and award Kelly

their costs and reasonable attorneys' fees from Creative Harbor pursuant to the Lanham Act; and

l.       Provide such other relief as the Court deems just and equitable.

                                        Respectfully submitted,

Date:  March 26, 2014

                                        /s/David Utykanski
                                        Christopher M. Brock (P-25,346)
                                        David P. Utykanski (P-47,029)
                                        Brent G. Seitz (P-54,435)
                                        Elizabeth M. Brock (P-68,663)
                                        Harness, Dickey & Pierce, PLC
                                        5445 Corporate Dr., Suite 200
                                        Troy, MI  48098
                                        (248) 641-1600
                                        cbrock@hdp.com
                                        dutykanski@hdp.com
                                        bseitz@hdp.com
                                        ebrock@hdp.com

                                        Counsel for Plaintiffs Kelly Services, Inc.
                                        and Kelly Properties, LLC.

18479024.1