UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES, INC. *et al.*,

    Plaintiffs/Counter-Defendants,

Case No. 14-cv-11249
Hon. Matthew F. Leitman

v.

CREATIVE HARBOR, LLC,

    Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART KELLY'S MOTION FOR SUMMARY JUDGMENT (ECF #36), (2) DENYING CREATIVE HARBOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF PRIORITY (ECF #48), AND (3) DIRECTING THE PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING**

This is a trademark dispute. Plaintiffs/Counter-Defendants Kelly Services, Inc. and Kelly Properties, LLC (collectively, "Kelly") and Defendant/Counter-Plaintiff Creative Harbor, LLC ("Creative Harbor") each developed a mobile application that provides job searching and job placement tools. Now, Kelly and Creative Harbor dispute which company has priority to the trademark "WorkWire." Creative Harbor has filed two "intent to use" applications with the United States Patent and Trademark Office (the "Creative ITUs"), and Creative Harbor claims priority based upon those filings. Kelly counters that it has priority because it used the mark in commerce before Creative Harbor filed the Creative ITUs.

1

In this action, Kelly and Creative Harbor each seek a declaratory judgment as to priority to the "WorkWire" trademark. In addition, Creative Harbor asserts counterclaims against Kelly for unfair competition, trademark dilution, and intentional interference with prospective business.

For the reasons explained below, the Court holds that:

(1) Kelly did not use the mark in commerce before Creative Harbor filed the Creative ITUs, and thus Kelly does not have priority based on that alleged prior use;

(2) Creative Harbor is not entitled to a judgment of priority over Kelly based upon its filing of the Creative ITUs, standing alone. Creative Harbor may ultimately be able to establish its priority to the mark over Kelly if Creative Harbor uses the mark in commerce and completes the registration process, but it does not yet have priority in the mark; and

(3) Kelly is entitled to summary judgment on Creative Harbor's counterclaims.

## FACTUAL BACKGROUND

**A.    The Kelly Workwire App**

Kelly provides career development information and job placement tools to employers and prospective employees. (*See* Declaration of Kelly Senior Marketing Manager Michael Catalano, ECF #36-3 at ¶5.) In early 2013, Kelly began developing an iPad application that would provide users with access to personnel placement services, career information, job searching tools, and a Kelly

branch office locator. (*See id.* at ¶¶7, 9.) Kelly intended to distribute the application through the Apple App Store. (*See id.* at ¶9.) Kelly decided to call its application "WorkWire" (the "Kelly WorkWire App"). (*See id.* at ¶10.)

Kelly completed the development of the Kelly WorkWire App on February 4, 2014. (*See* Declaration of Kelly Information Technology Architect David Kennedy, ECF #36-4 at ¶9.) That same day, Kelly submitted the Kelly WorkWire App to Apple's iTunes Connect, an Internet-based tool that allows a software developer to submit an application for sale in the Apple App Store, pending Apple's approval of the application. (*See* Catalano Decl. at ¶11.)

Approximately one week later, on February 10, 2014, Apple informed Kelly that the Kelly WorkWire App was rejected because of a problem with the application's metadata. (*See* ECF #36-3 at 18, Pg. ID 367.) The next day, Kelly re-submitted the Kelly WorkWire App for Apple's review. (*See id.*)

On February 17, 2014, Apple informed Kelly that the Kelly WorkWire App had been approved and was "ready for sale." (*See id.*; *see also* Catalano Decl. at ¶12.) However, Apple's designation of the Kelly WorkWire App as "ready for sale" did not immediately make the Kelly WorkWire App available for the public to download from the Apple App Store. (*See* Catalano Decl. at ¶16.) The Kelly WorkWire App was first released to the public via the Apple App Store on February 19, 2014, sometime after 8:11 p.m. Eastern Standard Time. (*See id.*; *see*

*also* ECF #41 (redacted).) A consumer first downloaded the Kelly WorkWire App from the Apple App Store on February 20, 2014. (*See* Catalano Decl. at ¶16.)

**B.    The Creative WorkWire App**

In September 2013, Christian Jurgensen ("Jurgensen"), an entrepreneur based in Los Angeles, California, independently came up with an idea for a mobile application for use by employers and prospective employees. (*See* Jurgensen Declaration, ECF #39 at 50, Pg. ID 520.) Jurgensen decided to call his application "WorkWire" (the "Creative Workwire App"). (*See id.*)

In early February 2014, Jurgensen formed Creative Harbor as the limited liability company responsible for the Creative WorkWire App. (*See* ECF #11 at 24, Pg. ID 121; ECF #36-6 at 2, Pg. ID 397.) At approximately the same time, Creative Harbor hired an intellectual property attorney to provide advice on trademark protection. (*See* Jurgensen Decl. at ¶6.) On February 16, 2014, the attorney informed Creative Harbor that the trademark for "WorkWire" was available. (*See id.* at ¶7.)

4

Three days later, on February 19, 2014, Creative Harbor filed the Creative ITUs with the United States Patent and Trademark Office (the "USPTO").[1] (*See* ECF ##39-2 and 39-3.) The Creative ITUs were for the mark "WorkWire" (hereinafter the "Mark"). (*See id.*) The Creative ITUs were filed at 6:28 p.m. and 7:56 p.m. Eastern Standard Time. (*See id.*)

Creative Harbor has tried to make the Creative WorkWire App available for download by the public through the Apple App Store. (*See* Jurgensen Decl. at ¶14.) However, Apple will not accept the Creative WorkWire App for posting in the Apple App Store because the "WorkWire" name is already being used by the Kelly WorkWire App. (*See id.*; *see also* ECF #40-2.) Creative Harbor acknowledges that it has not used the Mark in commerce and therefore has not completed registration of the Mark.

---

[1] As explained further below, an intent to use ("ITU") application is an anticipatory application for registration of a trademark based on the applicant's intent to use the mark in the future. Under certain circumstances, an ITU application establishes the applicant's priority to the trademark over another person who adopted the trademark after the ITU was filed.

## C. Timeline of Relevant Facts

The following chart summarizes the relevant facts (as presented above) in chronological order:

| Date | Kelly | Creative Harbor |
|---|---|---|
| Early 2013 | Kelly begins developing Kelly WorkWire App | |
| Sept. 2013 | | Jurgensen comes up with the idea for the Creative WorkWire App |
| Feb. 4, 2014 | Kelly completes development of Kelly WorkWire App and submits it to iTunes Connect for review | |
| Feb. 7, 2014 | | Jurgensen forms Creative Harbor |
| Feb. 10, 2014 | Apple informs Kelly that the Kelly WorkWire App has been rejected due to metadata problem | |
| Feb. 11, 2014 | Kelly resubmits Kelly WorkWire App to iTunes Connect | |
| Feb. 16, 2014 | | Intellectual property attorney informs Creative Harbor that the trademark for "WorkWire" is available |
| Feb. 17, 2014 | Apple informs Kelly that Kelly WorkWire App has been approved and is "ready for sale." But Kelly WorkWire App is not yet made available for the public to download on the Apple App Store. | |
| Feb. 19, 2014 (6:28 p.m. and 7:56 p.m. EST) | | Creative Harbor files the Creative ITUs for the Mark with the USPTO |

6

| Date | Kelly | Creative Harbor |
|---|---|---|
| Feb. 19, 2014 (after 8:11 p.m. EST) | Kelly WorkWire App is displayed to the public for the first time and becomes available for download on Apple App Store | |
| Feb. 20, 2014 | Kelly WorkWire App is downloaded for the first time from the Apple App Store by an end user | |

## PROCEDURAL HISTORY

On March 10, 2014, Creative Harbor's counsel sent a "cease and desist" letter to Kelly. (*See* ECF #11-4.) Creative Harbor stated that Kelly's use of the Mark in connection with the Kelly WorkWire App "constitutes trademark infringement and unfair competition under federal and state law." (*Id.* at 2, Pg. ID 166.) Creative Harbor therefore "demand[ed] that Kelly … cease all use of the term 'WorkWire'…." (*Id.*)

In response, Kelly filed this declaratory judgment action against Creative Harbor. (*See* the Complaint, ECF #1.) Kelly seeks a declaratory judgment that (1) Kelly possesses rights to the Mark that are superior to Creative Harbor's rights, (2) Kelly has not infringed on any rights to the Mark asserted by Creative Harbor, (3) any alleged trademark rights asserted by Creative Harbor are invalid, (4) Creative Harbor has engaged in unfair competition, and (5) Creative Harbor has

7

intentionally interfered with Kelly's business relationships. (*See id.* at ¶1.) Kelly also asserts an affirmative claim of intentional interference with business relationships. (*See id.* at ¶¶63-66.)

Creative Harbor then filed counterclaims against Kelly. (*See* ECF #11.) Creative Harbor seeks a declaratory judgment that its rights to the Mark are superior to any rights to the Mark possessed by Kelly. (*See id.* at 41, Pg. ID 138.) Creative Harbor also asserts counterclaims for unfair competition, trademark dilution, and intentional interference with prospective business (the "Additional Counterclaims"). (*See id.* at 32-41, Pg. ID 129-138.)

Kelly now seeks summary judgment on its claims and Creative Harbor's counterclaims ("Kelly's Motion"). (*See* ECF #36.) Kelly insists that it has priority to the Mark because it used the Mark in commerce before Creative Harbor. (*See id.* at 8-18, Pg. ID 328-338.) Kelly further insists that even if it cannot demonstrate priority to the Mark, Creative Harbor's Additional Counterclaims fail as a matter of law because the Creative ITUs do not grant Creative Harbor the substantive rights it seeks to enforce. (*See id.* at 18-24, Pg. ID 338-344.)

Creative Harbor seeks partial summary judgment "on the issue of priority in its right to use the Mark" ("Creative Harbor's Motion"). (ECF #48 at 2, Pg. ID 760.) Creative Harbor contends that it has priority to the Mark because it filed the

8

Creative ITUs before Kelly used the Mark in commerce. (*See id.* at 14-18, Pg. ID 785-89.)

The Court heard oral argument on both motions on August 11, 2015. For the reasons explained below, Creative Harbor has established that it filed the Creative ITUs before Kelly used the Mark in commerce and Kelly therefore does not have priority to the Mark. Nonetheless, Creative Harbor is not entitled to judgment as to its priority because it has not completed the registration of the Mark. Kelly is entitled to summary judgment as to Creative Harbor's Additional Counterclaims.

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate

9

when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

### A. Kelly Did Not Use the Mark in Commerce Before Creative Filed the Creative ITUs, and Thus Kelly Does Not Have Priority Based on Its Alleged Prior Use

Ordinarily, priority to a mark is established "as of the first actual use of [the] mark" in commerce. *Allard Enters., Inc. v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 358 (6th Cir. 1998). However, the Lanham Act "allows a person not yet using a mark to file an anticipatory application for registration" – i.e., an ITU application – "on the basis of an intent to use the mark in the future." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1111 n.3 (9th Cir. 2010); *see also Allard*, 146 F.3d at 357. If the ITU applicant later uses the mark in a commercial transaction and files a statement of use with the USPTO within the prescribed time frame, "the mark is registered and the date the ITU application was filed becomes the applicant's constructive-use date." *Zobmondo*, 602 F.3d at 1111 n.3 (citing 15 U.S.C. § 1057(c)). "This gives the [ITU] applicant priority-of-use over anyone who adopts the mark after the constructive-use date." *Id.*

10

Kelly argues that it used the Mark in commerce before Creative Harbor filed the Creative ITUs and that Kelly therefore has priority to the Mark over Creative Harbor. Creative Harbor contends that Kelly *did not* use the Mark in commerce before the Creative ITUs were filed and, thus, that Kelly *does not* have priority over Creative Harbor. Accordingly, the issue with respect to priority is whether Kelly actually used the Mark in commerce before Creative Harbor filed the Creative ITUs. The Court holds that Kelly did not.

Under the Lanham Act, "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. Use in commerce requires a "genuine commercial transaction" or an "attempt[] to complete [a] genuine commercial transaction[]." *Allard*, 146 F.3d at 358. The use need not be "extensive" nor "result in deep market penetration or widespread recognition." *Id*. However, "there has to be an 'open' use, that is to say, a use has to be made to the relevant class of purchasers or prospective purchasers…. [A]n 'internal' use … cannot give rise" to priority rights to a mark. *Sterling Drug, Inc. v. Knoll A.G. Chemische Fabriken*, 159 U.S.P.Q. 628, 631 (T.T.A.B. 1968). Indeed, "[t]he talismanic test for use in commerce [is] whether or not the use was sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Mountain Top Beverage Group, Inc., v. Wildlife*

*Brewing N.B., Inc.*, 338 F.Supp.2d 827, 835 (S.D. Ohio 2003), *aff'd* 432 F.3d 651 (6th Cir. 2005) (adopting the district court's opinion verbatim). Applying this test in *Allard*, *supra*, the Sixth Circuit found sufficient public use when a claimant offered its services to potential customers through "numerous … solicitations" bearing the mark. *Allard*, 146 F.3d at 359.

Kelly contends that it used the Mark in commerce on February 4, 2014, when it submitted the Kelly Workwire App to iTunes Connect for Apple's review. (*See* ECF #36 at 9, Pg. ID 329.) Kelly argues that its submission constitutes use in commerce because it "engaged Apple, an unrelated company, at arms-length, in the ordinary course of trade and subject to Apple's software developer's requirements." (*Id.*) But Kelly has not shown that its submission of the Kelly WorkWire App to Apple was sufficiently *open* or *public* to identify or distinguish its application in the minds of consumers. To the contrary, the bilateral exchange between Kelly and iTunes Connect provided no notice of the Kelly WorkWire App to potential consumers – i.e., persons who might eventually download the Kelly WorkWire App from the Apple App Store. Indeed, by merely submitting the Kelly WorkWire App for Apple's review, Kelly did not make the Kelly WorkWire App available for download by the public. At best, Kelly's submission was a preparatory step to making the Kelly WorkWire App available to consumers. "[A]n applicant's preparations to use a mark in commerce are insufficient to

12

constitute use in commerce." *Aycock Engineering, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1360 (Fed. Cir. 2009) (emphasis added).

Kelly counters that Apple was the "distributor" for the Kelly WorkWire App and that Kelly's submission of the Kelly WorkWire App to iTunes Connect therefore qualifies as use in commerce. (*See* ECF #36 at 9, Pg. ID 329.) Kelly relies primarily on *Raintree Publishers, Inc. v. Brewer*, 218 U.S.P.Q. 272, 1983 WL 51951 (T.T.A.B. 1983). (*See* ECF #36 at 11-13, Pg. ID 331-33.) In that case, Raintree Publishers, Inc. ("Raintree Publishers") asserted that it had priority to the mark "Raintree" as a trademark for children's and educational books as of the date that Raintree Publishers first sold one of its books to a distributor. A competing publisher challenged Raintree Publishers' priority to the "Raintree" mark on the ground that Raintree Publishers' transaction was with a "distributor rather than an ultimate purchaser." *Raintree Publishers*, 1983 WL 51951 at *2. The competing publisher insisted that the sale to the distributor was an "internal transaction[] which should be disregarded" for purposes of determining priority. *Id.* The Trademark Trial and Appeal Board ("TTAB") rejected the competing publisher's argument and held that Raintree Publishers had priority to the mark because "[t]he sale and shipment of products bearing a trademark to one's distributor is clearly sufficient to establish trademark rights." *Id.*

13

The facts of *Raintree Publishers* are easily distinguishable from the facts here. Raintree Publishers had a "contractual relationship" with its distributor. *Id.* Pursuant to that contract, Raintree Publishers actually *sold* its book to the distributor – i.e., the distributor was Raintree Publisher's customer. Here, Kelly insists that it "engaged Apple as the distributor" for the Kelly WorkWire App (*see* ECF #36 at 9, Pg. ID 329), but Kelly has not presented any evidence of a distributorship agreement between Kelly and Apple nor the terms governing Kelly's business relationship with Apple. Kelly further insists that its submission of the Kelly WorkWire App to iTunes Connect constituted a "genuine commercial transaction" with Apple (*id.* at 10, Pg. ID 330), but Kelly has presented no evidence that it actually sold or attempted to sell the Kelly WorkWire App to Apple and/or iTunes Connect.[2] Thus, the TTAB's conclusion that "[t]he *sale*" of products "to one's distributor" establishes rights to a mark is inapplicable here. *Raintree Publishers*, 1983 WL 51951 at *2 (emphasis added).

---

[2] Kelly correctly argues that "[a]n actual sale is not necessary to establish use." (ECF #36 at 13-14, Pg. ID 333-34.) Kelly notes that in *Allard* the Sixth Circuit determined that the defendants' "attempt[] to complete genuine commercial transactions" was sufficient to constitute use in commerce. (*Id.* at 14, Pg. ID 334 (quoting *Allard*, 146 F.3d at 359).) But Kelly has not demonstrated that it even *attempted* to engage in a genuine commercial transaction with Apple.

Moreover, and in any event, the TTAB's holding in *Raintree Publishers* is difficult to reconcile with binding precedent of the United States Court of Appeals for the Sixth Circuit. In *Mountain Top Beverage, supra*, the Sixth Circuit adopted the district court's statement that use in commerce must be "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind…." *Mountain Top Beverage*, 338 F.Supp.2d 827, 835 (S.D. Ohio 2003), *aff'd* 432 F.3d 651 (6th Cir. 2005) (finding that beverage maker did not satisfy "use in commerce" requirement by showing "dummy sample" bottle of malt liquor – not containing a label or actual malt liquor – to retailers). *Mountain Top Beverage* thus requires that use of a mark be *open* and *public* in order to constitute use in commerce. Transmission of a product to a distributor – as in *Raintree Publishing* and as Kelly claims happened here – does not distinguish the product in an appropriate segment of the public mind and thus does not satisfy the *Mountain Top Beverage* standard. Accordingly, *Raintree Publishers* does not compel the conclusion that Kelly's submission of the Kelly WorkWire App to iTunes Connect on February 4, 2014, constituted use in commerce.

In sum, the Court concludes that Kelly did not use the Kelly WorkWire App in commerce before Creative Harbor filed the Creative ITUs. Therefore, Kelly

does not have priority over Creative Harbor based on Kelly's alleged prior use of the Mark.[3]

## B.     Creative Harbor is Not Entitled to a Declaration That it Has Priority At this Time

In its Motion, Creative Harbor seeks summary judgment "on the issue of priority in its right to use the Mark." (Creative's Motion at 2, Pg. ID 760.) But Creative Harbor has not yet established its priority. All that Creative Harbor has done is file the Creative ITUs. The Creative ITUs – in and of themselves – do not establish Creative Harbor's priority to the Mark. *See, e.g., Fila Sport, S.p.A. v. Diadora America, Inc.*, 141 F.R.D. 74, 78 (N.D. Ill. 1991) (noting that an ITU application, standing alone, does not establish the applicant's priority to a mark). Rather, the Creative ITUs merely establish Creative Harbor's constructive-use date, *"[c]ontingent on [Creative Harbor's] registration of [the] [M]ark."* 15

---

[3] Kelly contends that even if it does not have priority based on its use of the Mark, Kelly is still entitled to priority based on equitable considerations. (*See* ECF #36 at 15-18, Pg. ID 335-38.)  Kelly cites *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 534 (2d Cir. 1964), for the proposition that "the concept of priority … is applied not in its calendar sense but on the basis of the equities involved." (ECF #36 at 15, Pg. ID 335.) However, *Chandon Champagne* was decided before Congress created the intent-to-use application process in 1988. *See* Trademark Law Revision Act of 1988 (the "TLRA"), Pub. L. No. 100-667, 102 Stat. 3935, 3939 (effective Nov. 16, 1989). Kelly has cited no authority subsequent to the TLRA holding that equitable considerations may trump the filing of an intent-to-use application. In any event, the Court is not persuaded that the equities warrant displacing the potential priority rights that may flow to Creative Harbor by virtue of it having filed the Creative ITUs.

16

U.S.C. § 1057(c) (emphasis added); *see also Zobmondo Entm't, LLC*, 602 F.3d at 1111 n.3. Thus, in order to establish its priority, Creative Harbor must actually complete the registration of the Mark by using the Mark in commerce and filing a statement of use with the USPTO within the prescribed time frame. *See* 15 U.S.C. § 1057(c); *see also Zobmondo Entm't, LLC*, 602 F.3d at 1111 n.3. Creative Harbor acknowledges that it has not yet used the Mark. Accordingly, while Creative Harbor may establish its priority at some point in the future, it is not now entitled to the declaration that it seeks here.

## C.     Creative Harbor's Additional Counterclaims Fail as a Matter of Law

As noted above, Creative Harbor asserts Additional Counterclaims against Kelly for unfair competition, trademark dilution, and intentional interference with prospective business. Each of the Additional Counterclaims is based on Creative Harbor's assertion that Kelly infringed on Creative Harbor's alleged priority rights to the Mark. (*See* ECF #11 at ¶¶30-31, 52-58, 61-71.) Creative Harbor says that it established those rights by filing the Creative ITUs. (*See id.*) But "an intent-to-use application does not, by itself, confer any rights enforceable against others." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 9, 18 (2008) (D.C. Cir. 2008); *see also Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F.Supp.2d 823, 832 (E.D. Va. 2001) (dismissing Lanham Act claim because plaintiff's intent-to-use application conferred "no statutory trademark rights to

17

preclude others from using [the] mark" until the plaintiff registered the mark); *Fila Sport, supra* (dismissing trademark infringement and unfair competition claims where plaintiff had only filed an intent-to-use application and had not registered the trademarks).

At oral argument, Creative Harbor acknowledged that the Creative ITUs, standing alone, do not confer the substantive rights that Creative Harbor seeks to enforce. Creative Harbor requested that this Court stay the Additional Counterclaims to give Creative Harbor more time in which to use and register the Mark – and to thereby obtain the rights it seeks to enforce. The Court declines to do so; it is not appropriate to leave facially-deficient claims pending to give a party an opportunity to potentially develop a basis for the claims. Because the Creative ITUs do not confer the substantive rights that Creative Harbor asserts in the Additional Counterclaims, Kelly is entitled to summary judgment on those claims.

**D.  Supplemental Briefing as to the Validity of the Creative ITUs**

In opposition to Creative Harbor's Motion, Kelly attacks the validity of the Creative ITUs on the ground Creative Harbor "did not possess a *bona fide* intent to use the Mark on *each and every* one of the goods and services identified in the applications." (ECF #55 at 8, Pg. ID 1320 (emphasis in original).) At least one federal court has invalidated an entire intent-to-use application where the applicant lacked a *bona fide* intention to use the mark on *all* of the items listed in the

18

application. *See Bobosky v. Adidas AG*, 843 F.Supp.2d 1134, 1141 (D. Or. 2011) ("proof of a lack of bona fide intent to use even one item in a class of goods on an intent-to-use application invalidates the application for that entire class"). If Kelly establishes that the Creative ITUs are invalid, Kelly may have priority over Creative Harbor based on Kelly's use of the Mark.

Kelly has filed Notices of Opposition to the Creative ITUs with the TTAB. (*See* ECF ##40-10, 40-12.) The Court directs the parties file supplemental briefs addressing whether this Court should (1) decide the validity of the Creative ITUs or (2) leave that issue to the TTAB and stay this action pending the TTAB's action on Kelly's Notices of Opposition.

## CONCLUSION

For the reasons discussed in this Opinion and Order, **IT IS HEREBY ORDERED** that Kelly's Motion for Summary Judgment (ECF #36) is **GRANTED IN PART AND DENIED IN PART**. Kelly's Motion is **DENIED** to the extent that it seeks summary judgment as to Kelly's priority based on Kelly's alleged prior use of the Mark. Kelly's Motion **GRANTED** as to Creative Harbor's Additional Counterclaims.

**IT IS FURTHER ORDERED** that Creative Harbor's Motion for Partial Summary Judgment on the Issue of Priority (ECF #48) is **DENIED**.

**IT IS FINALLY ORDERED** that the parties shall file supplemental briefs addressing whether this Court should (1) decide the validity of the Creative ITUs or (2) leave that issue to the TTAB and stay this action pending the TTAB's action on Kelly's Notices of Opposition. Each party's supplemental brief shall be no longer than 10 pages and shall be filed no later than **5:00 p.m. on September 11, 2015.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 21, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 21, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113