UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES, INC. *et al.*,

      Plaintiffs/Counter-Defendants,        Case No. 14-cv-11249
                                              Hon. Matthew F. Leitman

v.

CREATIVE HARBOR, LLC,

      Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS/COUNTER-DEFENDANTS ON COUNT IV OF DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIM

This is a trademark dispute over the mark "WorkWire" (the "Mark"). Defendant/Counter-Plaintiff Creative Harbor, LLC ("Creative Harbor") alleges that it has priority in the Mark based upon, among other things, two Intent to Use applications that it filed with the United States Patent and Trademark Office (the "USPTO") on February 19, 2014 (collectively, the "Creative ITUs"). Plaintiffs/Counter-Defendants Kelly Services, Inc. and Kelly Properties, LLC (collectively, "Kelly") allege that Kelly has priority in the Mark because it used the Mark in commerce before Creative Harbor filed the Creative ITUs.

In a prior Opinion and Order addressing the parties' cross-motions for summary judgment, the Court ruled that Kelly did not use the Mark in commerce before Creative Harbor filed the Creative ITUs and that Kelly thus does not have

1

priority based on that alleged prior use. (*See* Opinion and Order, ECF #62 at 2, Pg. ID 1631.)   In that same Opinion and Order, the Court left open the issue of whether, as Kelly argues, Creative Harbor cannot establish priority based upon the Creative ITUs because Creative Harbor lacked a bona fide intent to use the Mark with respect to each of the goods and services identified in those ITUs. (*See id.* at 17-18, Pg. ID 1646-1647.)

The Court has now reviewed the parties' supplemental briefs on this issue, and it holds that (1) Creative Harbor had a bona fide intent to use the Mark on some, but *not* all, of the goods and services identified in the Creative ITUs and (2) the Creative ITUs are invalid and ineffective because Creative Harbor has not deleted from the ITUs each of the goods and services on which it lacks a bona fide intent to use the Mark.   Accordingly, Kelly is entitled to summary judgment on Count IV of Creative Harbor's counterclaim to the extent that count alleges that Creative Harbor has priority in the Mark based upon its filing of the Creative ITUs.

## I.

The facts and procedural history of this action are set forth in detail in the Court's prior Opinion and Order (*See id.* at 2-9, Pg. ID 1631-1638.).   The Court includes in this Opinion and Order only the additional facts and procedural history germane to the issues addressed herein.

2

## A.

The first of the Creative ITUs, filed under International Class 35,[1] is Application Number 86198230 (the "Services ITU").   In the Services ITU, Creative Harbor affirmed that it "ha[d] a bona fide intent to use" the Mark in connection with the following lengthy list of services:

> Advertising and directory services, namely, promoting the services of others by providing a web page featuring links to the websites of others; Advertising services, namely, promoting and marketing the goods and services of others through all public communication means; Business services, namely, providing an online network for contractors to receive leads and bidding opportunities by means of an online marketplace for the purpose of developing business in the **independent contractor, employment, and human resources** industry; Business services, namely, registering, screening and verifying the credentials of third-party vendors, suppliers and contractors on behalf of others; Business support services, namely, business consulting to freelancers, start-ups, existing businesses and non-profit organizations; Employee relations information services; Employment hiring, recruiting, placement, staffing and career networking services; Employment services in the nature of talent casting in the fields of music, video, and films; Employment staffing consultation services; On-line auction services featuring **part-time, full-time, and contract and other recruitment opportunities**; Online auction services for **part-time, full-time, and contract and other recruitment**

---

[1] All goods or services are categorized within international trademark classes established by the Committee of Experts of the Nice Union and set forth in the International Classification of Goods and Services for the Purposes of the Registration of Marks (10th ed. 2011), published by the World Intellectual Property Organization.   *See Nice Agreement Tenth Edition–General Remarks, Class Headings, and Explanatory Notes,* http://www.uspto.gov/trademarks/notices /international.jsp.   International Class 35 includes "[a]dvertising; business management; business administration; [and] office functions."

**opportunities**; Online professional networking services; Professional credentialing verification services in the field of **healthcare, law, home contractor services**, namely, verifying the skills and knowledge of licensed professionals on behalf of others; Professional staffing and recruiting services; Promoting the goods and services of others by providing hypertext links to the web sites of others; Providing a searchable website featuring the goods and services of other vendors; Providing a web site featuring the ratings, reviews and recommendations on employers and employees and places of employment for use by employees, employers, business owners, and consumers; Providing an employer with candidates or potential employees to fill temporary, contract and permanent positions; Providing an on-line searchable database featuring classified ad listings and employment opportunities; Providing an on-line searchable database featuring employment opportunities; Providing an on-line searchable database featuring employment opportunities and content about employment; Providing career information; Providing employment information; Providing on-line employment information in the field of **recruitment, careers, job resources, job listings, and resumes**; Providing on-line employment placement services, namely, matching resumes and potential employers via a global computer network; Providing on-line interactive employment counseling and recruitment services; Providing online databases featuring information relating to employers and employees and places of employment; Temporary personnel services

(Services ITU, ECF #1-13 at 2-3, Pg. ID 34-35) (emphasis in original.)

The second of the Creative ITUs, filed under International Class 9,[2] is

Application Number 8619309 (the "Goods ITU"). In the Goods ITU, Creative

---

[2] International Class 9 includes "[s]cientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus for recording, transmission or reproduction of sound or

4

Harbor affirmed that it "ha[d] a bona fide intent to use" the Mark on the following list of goods:

> Computer application software for mobile phones, namely, software for **for [sic] employment, staffing and recruitment of employees and contractors**; Computer application software for **for [sic] employment, staffing and recruitment**, namely, software for **for [sic] finding employment, staffing, recruitment, and contractor opportunities**; Computer game software for use on mobile and cellular phones; Computer hardware and computer software programs for the integration of text, audio, graphics, still images and moving pictures into an interactive delivery for multimedia applications; Computer hardware and peripheral devices and computer software for data communication and translating and transmitting data sold therewith; Computer software that provides realtime, integrated business management intelligence by combining information from various databases and presenting it in an easy-to-understand user interface; Computer software that provides web-based access to applications and services through a web operating system or portal interface; Downloadable mobile applications for **for [sic] finding part-time, full-time and contract work and employment opportunities**

(Goods ITU, ECF #1-14 at 2, Pg. ID 42) (emphasis in original.)

## B.

In its previously-filed motion for partial summary judgment, Creative Harbor argued that it had priority in the Mark based upon its filing of the Creative ITUs. (*See* Creative Harbor's Motion, ECF #48 at 14-18, Pg. ID 785-89.)  Kelly

---

images; magnetic data carriers, recording discs; compact discs, DVDs and other digital recording media; mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment, computers; computer software; [and] fire-extinguishing apparatus."

countered that the Creative ITUs were invalid and ineffective because Creative Harbor lacked a bona fide intent to use the Mark on all of the goods and services identified in those ITUs at the time Creative Harbor filed them. (*See* Kelly's Response Brief, ECF #55 at 8, Pg. ID 1320.)  At the same time the Court was considering the parties' arguments with respect to the validity of the Creative ITUs, the parties were contesting the same issue in front of the Trademark Trial and Appeal Board (the "TTAB").

After reviewing Creative Harbor's arguments and Kelly's response, the Court was uncertain as to whether it should rule on the validity of the Creative ITUs or whether it should defer such a ruling to the TTAB.  Accordingly, the Court "direct[ed] the parties to file supplemental briefs addressing whether this Court should (1) decide the validity of the Creative ITUs or (2) leave that issue to the TTAB…." (*See* Opinion and Order, ECF #62 at 19, Pg. ID 1648.)

Thereafter, counsel for both parties "conferred and determined that the Court should decide the validity of the Creative ITUs." (Stipulated Order, ECF #64 at 1, Pg. ID 1651.)  The parties entered into a stipulation to that effect, and, pursuant to that stipulation, the Court entered an Order providing that it would decide the issue. (*See id.* at 2, Pg. ID 1652.)

The parties have now filed supplemental briefs addressing Kelly's arguments that the Court should void the Creative ITUs because Creative Harbor

6

lacked a bona fide intent to use the Mark on all of the identified goods and services. (*See* ECF ## 65 & 66.)  Creative Harbor suggests that the Court approach the issue as if Kelly has moved for partial summary judgment on Count IV of its counterclaim. (*See* ECF #65 at 2, Pg. ID 1661.)  The Court accepts that suggestion and, for the reasons explained below, grants partial summary judgment in favor of Kelly on Count IV.

## II

### A.

Prior to 1988, "the Lanham Act required that a trademark applicant already be using the mark in commerce at the time of the application's filing in order to qualify for trademark registration." *M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1374 (Fed. Cir. 2015).  The Trademark Law Revision Act of 1988, 15 U.S.C. § 1051 *et seq.* (the "TLRA"), "changed the Lanham Act by permitting [trademark] applicants to begin the registration process before actual use of [a] mark in commerce at the time of filing, so long as the applicant had a '*bona fide intention* … to use [the] mark in commerce' at a later date." *M.Z. Berger*, 787 F.3d at 1374 (emphasis in original) (quoting 15 U.S.C. § 1051(b)(1)).  In relevant part, the Lanham Act now provides that:

> A person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce may request registration of its trademark on the principal register hereby established by paying the prescribed

fee and filing in the Patent and Trademark Office an application and a verified statement, in such form as may be prescribed by the Director.

15 U.S.C. § 1051(b)(1).[3]

In *M.Z. Berger*, the Federal Circuit recently addressed "what 'bona fide intention' means under Section 1(b) of the Lanham Act." *M.Z. Berger*, 787 F.3d at 1375. The court explained that while the Lanham Act does not define the term "bona fide," an applicant's good faith intent to use the mark in commerce "must be [objectively] demonstrable and more than a mere subjective belief." *Id*. "In addition, an applicant's intent must reflect an intention to use the mark consistent with the Lanham Act's definition of 'use in commerce': [T]he bona fide use of a mark in the ordinary course of trade and not made merely to reserve a right in the mark." *Id*. at 1376 (quoting 15 U.S.C. § 1127). Although the "evidentiary bar" to demonstrate an objective intent to use a mark in commerce "is not high, the

_____

[3] "While applicants can begin the registration process having only a sincere intent, the TLRA also requires that applicants filing such intent-to-use applications must in due course either (i) file a verified statement of actual use of the mark, or (ii) convert the application into a use application. 15 U.S.C. §§ 1051(b)(3), (c), (d). In other words, such applicants are eventually required to show that the mark is being used in commerce before obtaining registration of the mark." *M.Z. Berger*, 787 F.3d at 1375. As this Court explained in its prior Opinion and Order (*see* ECF #62 at 16-17, Pg. ID 1645-1646), the filing of an intent-to-use application, standing alone, does not establish priority in a mark. *See, e.g., Fila Sport, S.p.A. v. Diadora America, Inc.*, 141 F.R.D. 74, 78 (N.D. Ill. 1991) (noting that an ITU application, standing alone, does not establish the applicant's priority to a mark). Rather, such a filing merely establishes the applicant's constructive-use date, contingent on the applicant's registration of the mark. *See* 15 U.S.C. § 1057(c); *see also Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1111 n.3 (9th Cir. 2010).

circumstances must indicate that the applicant's intent to use the mark was firm and not merely an intent to reserve a right in the mark." *Id*.

### B.

Kelly urges this Court to hold as a matter of law that Creative Harbor "lacked a bona fide intent to use the Mark for at least several of the goods and services in each class of [the Creative] ITUs." (Kelly Supp. Br., ECF #66 at 1, Pg. ID 1722.)  This argument faces a significant preliminary hurdle because "[a]s a general rule, the factual question of intent is particularly unsuited to disposition on summary judgment." *Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1567 (Fed. Cir. 1991).  However, both the TTAB and federal district courts have granted summary judgment against an ITU applicant where the evidence plainly establishes that it lacked a bona fide intent to use a mark. *See, e.g., Honda Motor Co. v. Winkelman*, 90 U.S.P.Q.2d 1660 (T.T.A.B. 2009); *City of Carlsbad v. Shah*, 666 F. Supp. 2d 1159 (S.D. Cal. 2009); *Bobosky v. Addidas AG*, 843 F. Supp. 2d 1134 (D. Or. 2011).

As the party seeking summary judgment, Kelly bears the initial burden of identifying evidence that Creative Harbor lacked a bona fide intent to use the Mark. *See Honda Motor Co.*, 90 U.S.P.Q.2d at 1663 (reviewing applicant's evidence of intent-to-use only after concluding that party seeking summary judgment had identified evidence that applicant lacked intent); *Cf. Boston Red Sox*

*Baseball Club LP v. Sherman*, 88 U.S.P.Q.2d 1581, 1587 (T.T.A.B. 2008) ("Opposer has the initial burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods.").[4]  If Kelly carries that burden, Creative Harbor "must produce either 1) *objective documentary evidence* of [its] intent to use the marks in commerce or 2) a valid explanation as to why no [such] evidence has been produced under a totality of the circumstances analysis." *City of Carlsbad*, 666 F. Supp. 2d at 1165-66 (citing *Honda Motor Co., supra*[5]) (emphasis added).  Indeed, "[i]t is clear that [an applicant's] statement [of intent to use a mark] alone is not sufficient to defeat [a] motion for summary judgment because it is subjective evidence, not objective evidence." *Id.* at 1166.

---

[4] The moving party always carries the initial "burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  If the burden of persuasion at trial is on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

[5] In *Honda Motor Co.*, the TTAB held "that the absence of any documentary evidence regarding an applicant's bona fide intention to use a mark in commerce is sufficient to prove that an applicant lacks such intention as required by Section 1(b) of the Trademark Act, unless other facts are presented which adequately explain or outweigh applicant's failure to provide such documentary evidence." *Honda Motor Co.*, 90 U.S.P.Q.2d at 1662 (citing *Commodore Electronics Ltd. v. CBM Kabushiki Kaisha*, 26 U.S.P.Q.2d 1502 (T.T.A.B. 1993)).

## C.

Kelly has made a substantial showing that Creative Harbor lacked a bona fide intent to use the Mark on all of the goods and services listed in the Creative ITUs. Kelly has identified sworn deposition testimony by Creative Harbor's CEO Christian Jurgensen ("Jurgensen") indicating that (1) in many respects, Creative Harbor "merely inten[ded] to reserve a right" in the Mark and (2) Creative Harbor lacked a firm intent to use the Mark with respect to several of the goods and services listed in the Creative ITUs. *M.Z. Berger*, 787 F.3d at 1376. Kelly directs the Court to the following representative portions of Mr. Jurgensen's testimony:

- Mr. Jurgensen testified that he asked his attorney to file the Creative ITUs in order "to protect this brand … *in case the brand got bigger; in case it diversifies a little bit*." (Jurgensen Dep. I at 147, ECF #56-1 at Pg. ID 1478; emphasis added.)

- Mr. Jurgensen said that the services and goods listed on the Creative ITUs "were defined with the idea of protecting my present and *future exploration of this name – of this brand*." (*Id.* at 155, Pg. ID 1486; emphasis added.)

- Mr. Jurgensen conceded that at the time his attorney drafted the Creative ITUs he (Jurgensen) "had clear ideas for some of them, and *some of them were meant for future exploration*." (*Id.* at 150, Pg. ID 1481; emphasis added.)

- Mr. Jurgensen acknowledged that some of the listed "services *might* be of future importance" and that they "*might* protect my endeavors in the future that I have…." (*Id.* at 146, Pg. ID 1477; emphasis added.)

- In the Goods ITU, Creative Harbor stated that it intended to use the Mark with "computer game software," but Mr. Jurgensen testified that Creative

11

Harbor did "not" intend to use the Mark "with a game." (Jurgensen Dep. II at 225, ECF #56-2 at Pg. ID 1507.)

- In the Services ITU, Creative Harbor said that it intended to use the Mark in connection with "professional credentialing verification services … on behalf of others," but Mr. Jurgensen acknowledged that he simply "wanted *to keep the option open to at some point do that*." (*Id.* at 226-27, Pg. ID 1508-09; emphasis added.)

- In the Services ITU, Creative Harbor said that it intended to use the Mark in connection with "employee relations information services," but when asked about that listing, Mr. Jurgensen did not know what it "refers to." (*Id.* at 230, Pg. ID 1512.)

- In the Services ITU, Creative Harbor said that it intended to use the Mark in connection with "employment staffing consultation services," and Mr. Jurgensen explained that Creative Harbor included this service because "*maybe at some point* [the application] would have consulting in there, *maybe some kind of career advisor*, something like this." (*Id.* at 230, Pg. ID 1512; emphasis added.)

- In the Services ITU, Creative Harbor said that it intended to use the Mark in connection with "business consulting" services, but Mr. Jurgensen conceded that he "wanted to make sure [that] was there included" because the company "could" perhaps perform those services "at some point" in the future. (*Id.* at 227, Pg. ID 1509.)

By identifying this deposition testimony, Kelly has carried its initial burden of showing that Creative Harbor did not have a bona fide intent to use the Mark on each and every one of the goods and services listed on the Creative ITUs.

Creative Harbor's response to Kelly's showing misses the mark. Creative Harbor cites substantial evidence that it did, in fact, have a bona fide intent to use the Mark on some of the goods and services listed on the Creative ITUs. (*See* Creative Harbor's Supp. Br., ECF #65 at 7-8, Pg. ID 1666-67.) This evidence

12

makes clear, for instance, that Creative Harbor had a "firm" intent to use the Mark in connection with an iPhone application that connected job seekers with employers. (*See id.*)  But evidence that Creative Harbor intended to use the Mark with respect to *some* of the goods and services listed in the Creative ITUs does not contradict Kelly's evidence that Creative Harbor *lacked* a firm intent to use the Mark on several of the *other* services and goods listed in the ITUs.  And, critically, Creative Harbor has not identified any *objective* evidence that it had a bona fide intent to use the Mark in connection with many of services and goods listed on the Creative ITUs, such as employee relations information services, business consulting services, professional credentialing verification services, computer game software, and/or computer hardware for integrating text and audio.  There is simply no material factual dispute as to whether Creative Harbor had a firm intent to use the Mark on *all* of the listed services and goods in the Creative ITUs: it did not.

The Court thus turns to the appropriate remedy to be applied where, as here, an ITU applicant has a bona fide intent to use a mark on some, but not all, of the goods and/or services listed in an ITU.

## D.

There is no mystery as to what happens when, at the time of filing, an ITU applicant has no bona fide intent to use its mark in commerce on *any* of the goods

13

or services listed in its application: the ITUs are deemed ineffective and the applicant is barred from registering the mark. *See, e.g., Honda Motor Co., supra*; *L.C. Licensing, Inc. v. Cary Berman*, 86 U.S.P.Q.2d 1883 (2008). Less clear is what happens if an applicant, like Creative Harbor in this case, has a bona fide intent to use a mark in commerce on *some,* but not all, of the listed goods and/or services.

Kelly says that such an application is *void ab initio in its entirety* and that the applicant may not register the mark (via that application) with respect to *any* of the goods or services listed on the application. (*See, e.g.,* Kelly Supp. Br., ECF #66 at 1, Pg. ID 1722.) But the decisions of the TTAB – which are persuasive in this context, *see, e.g., Gruma Corp. v. Mexican Resturants, Inc.*, 497 Fed. App'x 392, 396 n.1 (5th Cir. 2012) (citing cases) – do not support such an unforgiving rule. While the relevant decisions of the TTAB could certainly be clearer and could include more comprehensive analysis, they establish the following rule: absent fraud, an ITU applicant may cure an overbroad listing of goods and/or services by deleting from its application the goods and/or services on which it lacks a bona fide intent to use the mark.

The leading TTAB decision addressing an overbroad listing of goods and/or services in an application to register a trademark appears to be *Grand Canyon West Ranch LLC v. Hualapai Tribe*, 78 U.S.P.Q.2d 1696 (T.T.A.B. 2006). *Grand*

*Canyon* involved a use-based application for registration of a trademark, not an ITU application, but, as described below, the TTAB has looked to *Grand Canyon* in the ITU context.   In *Grand Canyon*, the party opposing the use-based application argued that "the application…must fail" in its entirety because the applicant did not actually use the mark in commerce on *all* of the services listed in the application. *Id*. at \*1.  The TTAB disagreed.  The TTAB surveyed its prior decisions and explained that while it had previously voided use-based applications where the applicant "had made *no* use of the mark in commerce," "an application was *not* deemed void *ab initio* if the applicant had made use on some, but not all, of the goods or services." *Id*. at \*2 (Emphasis added.)  The TTAB then explained that absent fraud, an applicant who did not use the mark on all of the goods and/or services listed in a use-application "may 'cure' this problem by amending" its application to delete the goods and/or services on which it had not used the mark. *Id*. at \*3.  And that is precisely how the applicant in that proceeding saved its application: it deleted from its application the services on which it had not used the mark and was permitted to continue its effort to register the mark with respect to the services on which it had used the mark. *Id*.

One year after *Grand Canyon*, in *The Wet Seal, Inc. v. FD Mgmt., Inc*., 82 U.S.P.Q.2d 1629 (T.T.A.B. 2007), the TTAB considered the appropriate remedy to be applied where an ITU applicant intends to use the mark on some, but not all, of

the listed goods and/or services.  In that case, the party opposing registration of a mark made the same argument that Kelly makes here: that an *entire* ITU application is void *ab initio*, and that registration of a mark should be denied *in toto*, if an applicant has a bona fide intent to use the mark on some, but not all, of the goods listed in the application.  The TTAB disagreed.  Relying on and citing *Grand Canyon*, the TTAB said that an ITU application "will *not* be deemed void for lack of a bona fide intention to use" unless the applicant lacked a "bona fide intention to use the mark on *all* of the goods identified in the application, *not just some of them.*" *Id*. at \*2 (emphasis added).  The TTAB also said that if it determined that the ITU applicant lacked a bona fide intent to use the mark on some of the goods identified in the application, it would "delete[]" those goods "from the application" rather than voiding the application in its entirety. *Id.* Ultimately, the TTAB determined that "the evidence falls far short of demonstrating … that the applicant lacked a bona fide intention to use the mark in connection with any of the identified products," and thus the TTAB did not end up deleting any products from the ITU application.

Four years later, in *Spirits Int'l, B.V. v. S.S. Taris Zeytin Ve Zeytinyagi Tarim Satis Kooperatifleri Birlgi*, 99 U.S.P.Q.2d 1545 (T.T.A.B. 2011), the TTAB returned to the issue of what remedy to apply when an ITU applicant intends to use a mark on some, but not all, of the identified goods in its application.  The ITU

application in *Spirits Int'l* said that the applicant intended to use a mark on both alcoholic and non-alcoholic beverages in International Classes 32 and 33.[6]  A party opposed the application with respect to all of the beverages listed in both classes, and the TTAB said that "to the extent that opposer is successful in proving … lack of bona fide intention to use the mark with respect to *any* of the goods in each class … the opposition against the classes *in their entirety* would be sustained." *Id*. at *2 n.3.  And, when the opposer showed that the applicant did not intend to use the mark on alcoholic beverages, the TTAB invalidated the ITU application with respect to *all* of the beverages – both alcoholic *and* non-alcoholic – listed in International Classes 32 and 33.

However (and this is a critical "however"), the TTAB indicated that the striking of the entire classes did *not* automatically follow from the fact that the applicant intended to use the mark on only some of the identified goods.  *Id*.  Indeed, the TTAB explained that the applicant "could have" avoided the invalidation of International Classes 32 and 33 in their entirety if it had undertaken the cure procedure set forth in *Grand Canyon* – i.e., if it had deleted from those classes the goods on which it did not intend to use the mark at the time of filing. *Id*.

---

[6] International Class 32 includes non-alcoholic beverages and beer ("[b]eers; mineral and aerated waters and other non-alcoholic beverages; fruit beverages and fruit juices; [and] syrups and other preparations for making beverages"); International Class 33 includes "alcoholic beverages (except beers)." *Nice Agreement Tenth Edition–General Remarks, Class Headings, and Explanatory Notes,* http://www.uspto.gov/trademarks/notices/international.jsp.

(citing *Grand Canyon*). Only after the applicant failed to take advantage of this opportunity did the TTAB invalidate the ITU with respect to International Classes 32 and 33 in their entirety.

In sum, none of the TTAB's relevant precedential decisions support Kelly's argument that where an ITU applicant intends to use the mark on some, but not all, of the goods and/or services listed in its application, the application is *void ab initio* and registration must be denied *in toto*.[7] Indeed, the decisions support the *opposite* proposition: that "absent fraud or some other such infirmity that infects the process, a lack of bona fide intent for some but not all of the goods is *not* necessarily a reason to deem the entire application *void ab initio*." *Sandro Andy, S.A. v. Light, Inc*., 2012 WL 6709268, at *4 (S.D.N.Y Dec. 27, 2012) (emphasis added) (citing *The Wet Seal*).[8]

---

[7] The federal court in *Bobosky*, *supra*, interpreted *Spirits Int'l* as standing for the proposition that an ITU application is *void ab initio* if the applicant intends to use the mark on some but not all of the identified goods. For the reasons explained above, this Court respectfully disagrees with that conclusion.

[8] *Sandro Andy* involved the registration (on the Principal Register of the USPTO) of a trademark initially registered in France. Such registration is accomplished under Section 66(a) of the Lanham Act, 15 U.S.C. § 1141f. The mark holder in *Sandro Andy* registered the mark under 15 U.S.C. § 1141f(a), which "allows a holder of an International Registration to extend protection to the United States" by filing an application that includes, among other things, "a declaration of bona fide intention to use the mark in commerce." *Sandro Andy*, 2012 WL 6709268, at *1 (quoting 15 U.S.C. § 1141f(a)).

## E.

But the question remains: what if an ITU applicant fails to delete from its application the goods and/or services on which it lacked an intent to use its mark? Under those circumstances, should a tribunal void the *entire* application or should the tribunal, itself, delete the goods and/or services for which the required intent was lacking?  The TTAB offered different answers to that question in *The Wet Seal* and *Spirits Int'l*.

In *The Wet Seal*, the TTAB suggested that the tribunal's job is to decide which "items, if any … should be deleted from the application" due to a lack of intent to use. *The Wet Seal*, 82 U.S.P.Q.2d 1629 at *3.  The TTAB implied that once a tribunal makes its deletions, an applicant may proceed with its effort to register its mark with respect to the remaining goods identified in the application. *See id.*

In contrast, in *Spirits Int'l*, the TTAB did not suggest that a tribunal may properly delete items that an applicant has not, itself, undertaken to delete.  Instead, the TTAB said that because the *applicant* had failed to make the required deletions, the appropriate remedy was to void the entire classes containing the goods for which the required intent was lacking.  *Spirits Int'l*, 99 U.S.P.Q.2d 1545 at *2, n. 3.

19

The Court chooses to follow *Spirits Int'l* rather than *The Wet Seal* for three reasons. First, the portion of *Spirits Int'l* addressing the proper remedy was the true holding of the TTAB, *see* 3 *McCarthy on Trademarks and Unfair Competition* 19:14 (4th ed. 2015) (explaining that the TTAB "held" that the entire classes must be voided based on lack of intent with respect to some items in the classes), whereas the portion of *The Wet Seal* addressing the remedy was not essential to the TTAB's holding. Indeed, as noted above, in *The Wet Seal*, the TTAB ultimately concluded that the opposer had *failed* to demonstrate that the applicant lacked an intent to use the mark on any of the goods, and thus the discussion of the remedy to be applied if the applicant lacked the required intent was not essential to the result.

Second, while both *The Wet Seal* and *Spirits Int'l* recognize the persuasive nature of, and purport to follow, the *Grand Canyon* approach to overbroad entries on trademark applications, the decision in *Spirits Int'l* remains truest to *Grand Canyon*. In *Grand Canyon*, the TTAB referred to the *applicant's* opportunity to "cure" through amendment or deletion and allowed the *applicant* to make the deletions. *Grand Canyon* does not say anything about a tribunal making deletions for an applicant, as the TTAB proposed to do in *The Wet Seal*.

Finally, *Spirits Int'l* is a more recent precedent of the TTAB and, indeed, appears to be the TTAB's "last word" on the remedy issue before this Court. *See*

*Bobosky*, 843 F. Supp. 2d at 1141 n.5 (following *Spirits Int'l* rather than *The Wet Seal* because *Spirits Int'l* was decided more recently).[9]

## F.

Application of the *Spirits Int'l* framework leads the Court to invalidate the Creative ITUs in their entirety.  In a declaration submitted along with its supplemental brief, Creative Harbor has offered to amend the Creative ITUs to eliminate one service and one good. (*See* Jurgensen Decl., ECF #58-3 at ¶¶ 52-53, 59-63.)  But those modest deletions do not cure the material overbreadth in Creative Harbor's listing of the goods and services on which it claimed an intent to use the Mark.  Indeed, even with Creative Harbor's proposed deletions, the Creative ITUs still list services (*e.g.*, employee relations information services, business consulting, professional credentialing verification services) and goods (*e.g.*, computer game software, computer hardware for integrating text and audio) on which Creative Harbor lacks a firm intent to use the Mark.  Creative Harbor has thus left itself in the same position as the ITU applicant in *Spirits Int'l*.  Like that applicant, Creative Harbor failed to delete from the Creative ITUs all of the goods

---

[9] The court in *Bobosky* expressed reservations about following *Spirits Int'l* over *The Wet Seal* and opined that *The Wet Seal* is more consistent with *Grand Canyon*. For the reasons explained above, this Court respectfully disagrees.  However, this Court believes that additional guidance from the Federal Circuit on the issues presented herein (and in *The Wet Seal* and *Spirits Int'l*) would be extremely helpful to the bench and bar.  While this Court has done its best to interpret and apply the TTAB's precedents in this area, the Court found those precedents to be difficult to reconcile with one another.

and/or services on which it lacked a *bona fide* intent to use its Mark.  Thus, like the TTAB in *Spirits Int'l*, this Court voids Creative Harbor's ITU applications in their entirety.

On first blush, voiding Creative Harbor's entire ITUs may seem unduly harsh.  In many respects, Creative Harbor "played by the rules."  It worked hard to develop a potentially significant mobile application, and before choosing a name and mark for that application, it made a diligent effort to determine whether "WorkWire" was available for use. (*See* Jurgensen Decl., ECF #58-3 at ¶19, Pg. ID 1567.)  But upon closer inspection, it becomes clear that Creative Harbor's conduct was, in at least some respects, flatly inconsistent with the Lanham Act's ITU process.  As the Federal Circuit has made clear, an applicant may not use an ITU "merely … to reserve a right in a mark," *M.Z. Berger*, 787 F.3d at 1376, yet that is exactly what Creative Harbor did.  Indeed, Mr. Jurgensen candidly admitted that Creative Harbor filed the Creative ITUs in order to broadly reserve the Mark for use in a "brand" he thought he "might" develop – a brand that extended well beyond the use that Creative Harbor actually intended to make of the Mark when it filed the Creative ITUs.  And when Kelly raised Creative Harbor's lack of intent, Creative Harbor then failed to cure the problem by deleting from the Creative ITUs all of the services and goods on which it did not intend to use the Mark.  Instead of curing, Creative Harbor forced Kelly to continue litigate the validity of the

22

Creative ITUs.  Under all of these circumstances, voiding the Creative ITUs does not strike the Court as a disproportionate or extreme remedy.

## G.

Because the Court has voided the Creative ITUs in their entirety, Kelly is entitled to summary judgment on Count IV of Creative Harbor's counterclaim to the extent that that count seeks a ruling of priority based upon the Creative ITUs.

**IT IS SO ORDERED**.

s/Matthew F. Leitman

MATTHEW F. LEITMAN

UNITED STATES DISTRICT JUDGE

Dated:  October 16, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 16, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda

Case Manager

(313) 234-5113
