UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES, INC. *et al.*,

               Plaintiffs/Counter-Defendants,            Case No. 14-cv-11249
                                                 Hon. Matthew F. Leitman

v.

CREATIVE HARBOR, LLC,

               Defendant/Counter-Plaintiff.

_____/

## ORDER DENYING CREATIVE HARBOR'S MOTION FOR RECONSIDERATION (ECF # 70)

On October 16, 2015, this Court entered an Order granting partial summary judgment in favor of Plaintiffs/Counter-Defendants Kelly Services, Inc. and Kelly Properties, LLC (collectively, "Kelly") on Count IV of Defendant/Counter-Plaintiff Creative Harbor, LLC's ("Creative Harbor") counterclaim (the "Order"). (*See* ECF #68.)   The Court also declared void the intent-to-use ("ITU") applications that Creative Harbor has filed with the United States Patent and Trademark Office.  (*See id.*)

Creative Harbor has now filed a timely Motion for Reconsideration of the Order (the "Motion").   (*See* ECF #70.)   Some portions of the Motion repeat arguments that Creative Harbor has previously presented.   The remainder of the Motion does not identify a palpable defect, the correction of which will lead to a

1

different result. *See* Local Rule 7.1(h).   Accordingly, the Court **DENIES** the Motion.

## I.

Creative Harbor's primary argument in the Motion is that this Court erred when it failed to follow the precedential decision of the Trademark Trial and Appeal Board (the "TTAB") in *Syndicat Des Proprietaires v. Pasquier DesVignes*, 107 U.S.P.Q.2d 1930, 2013 WL 5407284 (TTAB 2013).   Creative Harbor insists that *Syndicat* is the most recent controlling decision of the TTAB on the remedy issue before the Court and that *Syndicat* precluded the Court from voiding its ITU applications in their entirety.   The Court disagrees.   *Syndicat* is not inconsistent with the Court's decision to void Creative Harbor's entire ITU applications on the ground that Creative Harbor did not delete, or agree to delete, each of the uses on which it lacked a bona fide intent to use the mark.

In *Syndicat*, the applicant *admitted* that it lacked a bona fide intent to use the mark on two of the listed uses and *agreed* to the entry of a judgment deleting those uses.   *See Syndicat*, 2013 WL 5407284 at *1.   Thus, as Creative Harbor aptly notes, *Syndicat* involved "the long-established rule allowing an applicant to amend or delete [an] overbroad listing of goods or services" in an ITU application. (Mot. for Reconsid., ECF #70 at 16, Pg. ID 1792.)   But unlike the ITU applicant in *Syndicat*, Creative Harbor did *not* delete, nor agree to delete, from its ITU

applications all of the goods and services on which it lacked a firm intent to use the mark. On the contrary, when Kelly raised the lack-of-intent issue before this Court, Creative Harbor attempted to prove that it *did* have the required intent to use the mark on all but two of the listed goods and services, and it failed in that regard. (*See, e.g.,* Creative Harbor's Reply Br., ECF #58-3 at 17-20, Pg. ID 1578-81.) *Syndicat* says nothing about the remedy to be applied under these circumstances.[1]

In contrast, the decision in *Spirits Int'l, B.V. v. S.S. Taris Zeytin Ve Zeytinyagi Satis Kooperatifleri Birgligi*, 99 U.S.P.Q.2d 1545 (TTAB 2011), *does* address the proper remedy to be applied where, as here, an ITU applicant neither deletes, nor offers to delete, from its application those goods and services on which it lacked an intent to use a mark. Simply put, *Spirits Int'l* – which the Court followed – is a better fit here than *Syndicat*. Thus, the Court did not palpably err when it applied *Spirits Int'l* rather than *Syndicat*.

---

[1] *Syndicat* actually says little about *the TTAB's view* of an appropriate remedy to be applied when an ITU application lists uses on which an applicant lacks a bona fide intent to use a mark. While the *result* in *Syndicat* is consistent with the rule that an applicant may delete goods and services for which it lacks the required intent, the TTAB offered no analysis on this point. In the introductory section of the decision – well *before* the TTAB began its analysis – the TTAB noted that the applicant agreed to delete the uses for which it lacked the required intent, and then at the end of the decision – *after* the TTAB had concluded its analysis – the TTAB simply held the applicant to its agreement by deleting the uses in question.

## II.

Creative Harbor repeatedly says that the Court held that its ITU applications were "void ab initio." (*See, e.g.*, Mot. for Reconsid., ECF #70 at 19, Pg. ID 1795.) Creative Harbor then insists that this holding was inconsistent with the Court's recognition that under the governing rule, an ITU application is *not* void ab initio simply because, at the time of filing, the applicant lacked the required intent with respect to all of the listed goods and/or services. (*See id.* at 20-21, Pg. ID 1796-97 – noting the purported "iron[y]" of the Court's holding.)  But the Court did *not* hold that Creative's ITU applications were void ab initio, and Creative's argument to the contrary appears to ignore the distinction between an ITU application that is void ab initio (meaning an ITU application that is void *at the outset and upon filing*), and one that is *voidable* upon an applicant's failure to correct defects in an already-filed ITU application.

The Court explained at length that an ITU application is *not* void ab initio where, as here, at the time of filing the applicant intends to use a mark on some, but not all, of the listed goods and/or services.  (*See* Order, ECF #68 at 14, Pg. ID 1750.)  Instead, such an application is *voidable* if, when challenged, the applicant does not delete, or offer to delete, the goods and/or services on which it lacked the required intent.   Under this rule, Creative Harbor could have salvaged the applications if, in response to Kelly's challenge that it lacked the required intent, it

4

had deleted, or offered to delete, each of the overbroad uses listed in the application.[2]  It did not.

## III.

Creative Harbor stresses that in the proceedings before the TTAB, Kelly did not oppose its (Creative Harbor's) ITU applications on the ground that Creative Harbor lacked a bona fide intent to use the mark on all of the listed goods and services.  Creative Harbor then insists that summary judgment in favor of Kelly may not rest upon the "unpleaded ground" of lack of bona fide intent. (Mot. for Reconsid., ECF #70 at 33-36, Pg. ID 1809-12.)

However, Creative Harbor ignores that it expressly stipulated that the Court, not the TTAB, would "decide the validity of the Creative ITUs" and, in conjunction, rule upon Kelly's argument that Creative Harbor's ITU applications

---

[2] Creative Harbor interprets the Order as faulting Creative Harbor for not moving *before the TTAB* to amend its ITU applications to delete the goods and services for which it lacked the required intent. (*See* Mot. for Reconsid., ECF #70 at 35, Pg. ID 1811.)  The Order did not do that.  On the contrary, the Court gave Creative Harbor credit for offering – in *these* proceedings – to delete certain goods and services from its ITU applications, but it nonetheless voided the ITU applications because Creative Harbor's proposed deletions did not cure the overbreadth of its applications.  Had Creative Harbor offered *here* – in response to Kelly's lack-of-intent challenge – to stipulate to entry of an order requiring it to delete from its applications *all* of the goods and services on which it lacked the required intent, it could have salvaged its ITU applications.  Importantly, Creative Harbor was well aware of the opportunity to attempt to preserve its ITU applications by offering, *in these proceedings*, to delete certain goods and services from its ITU applications.  Indeed, Creative Harbor submitted a declaration in which it offered to make certain, limited deletions to its ITU applications. (*See* Supp. Decl. of C. Jurgensen, ECF #58-3 at 17-20, Pg. ID 1578-81.)

were void for lack of intent-to-use. (*See* Stipulation, ECF #64, Pg. ID 1651.)  And Kelly's lack-of-intent attack on the ITU applications was fairly presented in *this* action.   Kelly raised the attack in response to Creative Harbor's motion for summary judgment (*see* Kelly's Br., ECF #55 at 14, Pg. ID 1320); Creative Harbor addressed the attack in its reply brief (*see* Creative Harbor's Reply Br. ECF #58 at 11, Pg. ID 1554); and then both parties filed supplemental briefs that focused exclusively on the lack-of-intent issue. (*See* Creative Harbor's Supp. Br., ECF #65; Kelly's Supp. Br., ECF #66.)  Moreover, Creative Harbor acknowledged that the Court could properly treat the lack-of-intent issue as having been raised by Kelly in a summary judgment motion. (*See* Creative Harbor's Supp. Br., ECF #65 at 9, Pg. ID 1661.)  Thus, the lack-of-intent issue was fairly presented to this Court for decision, and it was proper for this Court to rule on the issue irrespective of the parties' positions before the TTAB.[3]

## IV.

Creative Harbor's Motion ends with an ominous prediction that grave consequences will flow from the Court's ruling.  Creative Harbor says:

---

[3] Creative Harbor says that the Court erred when it stated that the lack-of-intent issue was pending before the TTAB.  Even if the Court did err in that regard, the Court's statement that the issue was also before the TTAB was not central to the Court's ruling, and, for the reasons explained above, the Court would not change its ruling or analysis if Creative Harbor is correct that Kelly did not raise the lack-of-intent before the TTAB.

>If this Court approves the concept of an app development competitor being able to attack any ITU application in the tech field predicated on wording of possible future functions, then every new ITU application will be subject to attack for identification of a use not yet realized.  A mass of bona fide suits and TTAB oppositions will follow, stifling innovation, blocking entry into the tech industry due to legal cost and economic risk.

(Mot. for Reconsid., ECF #70 at 38, Pg. ID 1814.)

These policy arguments appear to rest upon a misunderstanding of the ITU application process and its purposes.  The process is not intended to permit an applicant – in the "tech field" or any other field – to save a mark for a "possible future function" or for a use that is merely conceivable but not yet "realized." Rather, the process is intended to allow an applicant to secure a mark for a use that it *actually intends to make of the mark.  See M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1374-75 (Fed. Cir. 2015).  Creative Harbor's suggestion that an ITU applicant should be permitted to include in its application uses for a mark that are merely "possible" (or that simply bear some relation to uses that are actually intended) conflicts with the Federal Circuit's teaching that the ITU process may not be used "merely to reserve a right in the mark." *Id*. at 1376.

Ironically, Creative Harbor seems not to recognize that *its* approach to the ITU process poses a real risk of "stifling innovation."  Under Creative Harbor's conception of the ITU process, an applicant could broadly reserve a mark for use on myriad goods and services even if the applicant did not intend to use the mark

on them at the time it filed its application.  That sort of "squatting" on a mark is more likely than the Court's decision here to discourage innovation and development.

Likewise, Creative Harbor overstates the threat that the Court's ruling poses to innovation.  Indeed, an innovator who inadvertently includes in its ITU application goods and/or services on which it lacks an intent to use a mark faces no serious jeopardy from the Court's ruling so long as it timely agrees to delete the overbroad portions of its application.  And the Court's ruling does not make it any more difficult for an ITU applicant who files a proper application – i.e., one that list only goods and/or services on which the applicant actually intends to use a mark – to defeat an opposition based upon alleged lack-of-intent.  The applicant remains able defeat such a challenge by simply producing objective documentary evidence of its intent – a burden that is "not high." *Id*.  Thus, the Court's ruling does not create a legal landscape that incentivizes the filing of baseless challenges to ITU applications or imposes undue burdens on the filing of ITU applications by innovators.

## V.

A higher court may well take issue with the Court's decision to void Creative Harbor's ITU applications.  The lack of both clarity and substantial analysis in the TTAB precedents that the Court attempted to follow leave ample

8

room for reasonable disagreement.  But the Court is convinced that it has not made a palpable error, the correction of which would result in a different disposition of this action.  Accordingly, the Motion for Reconsideration (ECF #70) is **DENIED.**[4]

      **IT IS SO ORDERED.**

                    s/Matthew F. Leitman
                    MATTHEW F. LEITMAN
                    UNITED STATES DISTRICT JUDGE

Dated:  November 10, 2015


      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 10, 2015, by electronic means and/or ordinary mail.

                    s/Holly A. Monda
                    Case Manager
                    (313) 234-5113

---

[4] If and to the extent Creative Harbor is now offering to delete from its ITU applications all of the goods and/or services on which it lacks an intent to use the mark (*see* Mot. for Reconsid., ECF #70 at 38, Pg. ID 1814), that offer comes far too late and will not now be considered by the Court.